**IN THE UNITED STATES DISTRICT COURT FOR**
**THE WESTERN DISTRICT OF TEXAS AUSTIN**
**DIVISION**

| | | |
|---|---|---|
| RADIANT PLUMBING SERVICE, INC., | § | |
| Plaintiff, | § | |
| v. | § | |
| | § | **1:17-CV-274-DAE** |
| RELIANT PLUMBING & DRAIN | § | |
| CLEANING, LLC AND MAX HICKS, | § | |
| Defendants. | § | |

**REPORT AND RECOMMENDATION**

Before the court is Radiant's Motion for Civil Contempt (Dkt. 59).[1] Having reviewed the briefing, ordered supplemental briefing, and conducted two hearings on the Motion, the undersigned issues this Report and Recommendation.

**I.    Introduction**

This is a dispute about Defendant Reliant's use of "Radiant" as a keyword following entry of the District Court's Agreed Final Judgment and Permanent Injunction (the "Judgment"). Radiant accuses Defendants Reliant Plumbing & Drain Cleaning, LLC ("Reliant") and its sole owner, Max Hicks (collectively, "Reliant") of using "Radiant" as a paid keyword after February 2019 in violation of the Judgment. Reliant acknowledged they used "Radiant" as a paid keyword. Dkt. 85 (Transcript of Feb. 13, 2024 Motion Hearing) at 13:19–24. After Radiant filed this Motion, the undersigned conducted a hearing on October 18, 2023 at which the court ordered limited discovery related to damages and defenses. The undersigned subsequently conducted an evidentiary hearing on February 13, 2024. The undersigned concluded Reliant violated the Judgment. Tr. 13:23.

---

[1] Senior United States District Judge David A. Ezra referred the Motion to the undersigned. Text order, Sept. 5, 2023. Judge Ezra's Text Order does not specify whether the referral was for disposition or a report and recommendation. Accordingly, and out of an abundance of caution, the undersigned issues this Report and Recommendation pursuant to 28 U.S.C. § 636(b), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

Having considered the evidence presented at the hearing and the applicable law, the undersigned concludes that Radiant has met its burden to prove Reliant's contempt by clear and convincing evidence. The undersigned rejects Reliant's assertion of unclean hands as a defense.

## II.    Findings of Fact

Radiant is a well-known plumbing and home-services company that provides services under the trademark Radiant and other marks incorporating Radiant. Radiant sued Reliant in March 2017 for infringing its Radiant marks. The parties settled the dispute in January 2019, and as a part of the settlement, they executed a Settlement Agreement and Mutual Release that incorporated a Co-Existence Agreement and Agreed Motion for Entry of Final Judgment. In February 2019, Judge Ezra entered a Final Judgment and Permanent Injunction (the "Judgment"), stating that "Defendants may continue use of RELIANT, provided that such use strictly complies with the terms of this order" and ordering in relevant part:

> The Court hereby ORDERS that Defendants and those acting in concert or participation with them be permanently enjoined and restrained from:
>
> . . .
>
> (e) using "Radiant" or any phrases that include the term "Radiant" in their marketing efforts, including as a keyword or metatag in any electronic advertising[.]

Dkt. 56.

Three years later, in October 2022, Radiant discovered Reliant was using "Radiant" as a keyword. Shortly thereafter, Radiant sent a letter to Reliant, advising them of their violation. Upon receiving the letter, Mr. Hicks ordered his marketing manager at the time, Eleanor Gach, to remove or deactivate "Radiant" as a keyword and export his company's keyword list (without showing Reliant's use of "Radiant" as a keyword) to Reliant's counsel. Counsel for Reliant then advised Radiant that her client was not using "Radiant" as a keyword. That was not true.

Relilant had been using "Radiant" and phrases including the term "Radiant" as a keyword

since the Judgment in February 2019 and continued using "Radiant" as a keyword until at least December 2022. In September 2023, Radiant moved for contempt on the basis that Reliant had used "Radiant" and phrases including the term "Radiant" as a keyword in violation of the Judgment.

The evidence showed that between February 2019 and December 2022, Reliant spent $127,649.30 on "Radiant" and phrases including the term "Radiant" as a keyword. In that time, Reliant's "Radiant" keywords received 36,569 impressions and 3,169 clicks. Reliant began using "Radiant" as a paid keyword beginning in June 2019; Reliant's use of "Radiant" "came and went" without "rhythm or reason." Tr. 228:10–11.

Mr. Hicks testified that he was involved at a high level in Reliant's online marketing. Despite knowing of the keyword prohibition in the Judgment, between February 2019 and October 2022, Mr. Hicks, who often communicated orally due to his dyslexia, admitted that he never circulated a written memorandum making his employees aware of the keyword prohibition and never went into Reliant's Google Ads platform to ensure his company's compliance with the Judgment. The evidence showed "Radiant" had been added as a keyword as part of recommendations accepted by Reliant or auto-applied recommendations by Google.

At the February 13, 2024 evidentiary hearing, three former Reliant employees testified that Mr. Hicks's involvement in Reliant's online marketing was not limited to a high level but that he was specifically involved in his company's Google Ads platform. All three also testified that, despite their roles in marketing at Reliant, Mr. Hicks never told them about the keyword prohibition in the Judgment.

The testimony of Brooke Powers, former office manager (from December 2018 to July 2022) and marketing assistant (from June 2023 to October 2023) at Reliant, established that Mr. Hicks had her download the Google Ads platform to his phone and would instruct her on Google

3

Ads in preparation for their marketing meetings. Ms. Powers also established that she was trained that if a customer called looking for Radiant, she should do what she had to do to retain the customer even if the customer was looking for Radiant. Mr. Hicks "was excited" when Reliant would get business from confused customers and told Ms. Powers that his approach to following rules or obeying authority was "do it until your hand gets slapped or we can pay to get out of it."

The testimony of Ashley Pettibone, marketing specialist (from February 2021 to March 2022) at Reliant, established that Mr. Hicks had to approve all marketing decisions. She also established that Mr. Hicks would meet with Reliant's Google Ads representatives and that she would share her screen to show Mr. Hicks the company's Google Ads platform, which displayed a list of the keywords Reliant was purchasing. "[It] is safe to say," Ms. Pettibone testified, that "Hicks knew what keywords Reliant was purchasing via Google Ads."

The testimony of Eleanor Gach, customer service representative and marketing/operations manager (from August 2021 to December 2022) at Reliant, established that "95 percent of the time" Mr. Hicks was involved in her meetings with Reliant's Google Ads representative, going over the company's Google Ads campaigns and goals. Ms. Gach also established that she was trained to book customer calls "no matter what" and that Reliant's employees "were not to disclose or try to inform anybody that we weren't Radiant."

Finally, Radiant's witness Michael McDonald testified in part regarding Defendants' unclean-hands defense. The testimony of Mr. McDonald established that one of the Reliant domain names raised by Reliant as part of the unclean-hands defense was at issue in the underlying litigation, but that domain does not appear in the parties' private settlement agreement. Additionally, the parties executed a release of all past claims in the underlying litigation in early 2019; Reliant never told Radiant not to renew the Reliant domains, Radiant received no visitors to the domains, and when Reliant notified Radiant of their objections, Radiant cured the alleged

violation. The evidence also showed that Radiant used "Reliant" as a Google keyword after the parties entered into the Settlement Agreement. Mr. McDonald testified that Radiant received two clicks from that usage in August 2021 and that Radiant has listed "Reliant" as a negative keyword since February 2019, receiving no impressions or clicks on that keyword.

## III.    Conclusions of Law

The undersigned concludes that Radiant met its burden at the February 13, 2024 hearing to prove by clear and convincing evidence Reliant's contempt. The undersigned also rejects Reliant's unclean hands defense as a basis for denying Plaintiff's Motion.

### A.    Contempt

"[C]ourts have inherent power to enforce compliance with their lawful orders through civil contempt." *Spallone v. U.S.*, 493 U.S. 265, 276 (1990); *see also In re Bradley*, 588 F.3d 254, 265 (5th Cir. 2009) ("[C]ivil contempt remains a creature of inherent power."). Civil contempt serves two purposes: "It can be used to enforce compliance with a court's order through coercion, or it can be used to compensate a party who has suffered unnecessary injuries or costs because of contemptuous conduct." *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961–62 (5th Cir. 1995).

A party seeking a contempt order need only establish: "(1) that a court order was in effect, and (2) that the order required certain conduct by the respondent, and (3) that the respondent failed to comply with the court's order." *F.D.I.C. v. LeGrand*, 43 F.3d 163, 170 (5th Cir. 1995). "The only issue in a civil contempt hearing is the respondent's compliance with the court's order; noncompliance can be contemptuous even [in] the absence of the respondent's willfulness." *Travelers Cas. and Sur. Co. of Am. v. Padron*, 2017 WL 8895641, at *5 (W.D. Tex. Aug. 31, 2017); *see also Chao v. Transocean Offshore*, 276 F.3d 725, 728 (5th Cir. 2002) ("Good faith is not a defense to civil contempt"); *N.L.R.B. v. Trailways*, 729 F.2d 1013, 1017 (5th Cir. 1984) ("Since this is a proceeding in civil, not criminal, contempt, the only issue is the Company's actual

compliance with this Court's orders; any absence of willfulness is irrelevant.").

There is clear and convincing evidence that all three elements are met. First, the District Court's Judgment has been in effect since it was issued in February 2019. And since the District Court entered the Judgment, there have been no intervening court orders and there has been no appeal of the Judgment. Second, the Judgment required certain conduct by Reliant, namely, that Reliant and those acting in concert or participation with them were permanently enjoined and restrained from using "Radiant" or any phrases that include the term "Radiant" as a keyword. Third, since February 2019, Reliant used "Radiant" and phrases that include the term "Radiant" as a keyword, resulting in 36,569 impressions and 3,169 clicks on Reliant's advertisements. The undersigned finds that Reliant did not comply with the Judgment and should be held in contempt.

### B.      Unclean Hands

The undersigned now turns to Reliant's unclean-hands defense. As an initial matter, Reliant has not shown that the defense is relevant to Radiant's Motion for Civil Contempt specifically or that it is a defense to contempt generally.

The only issue relevant in a contempt proceeding is whether the responding party complied with the court's order. *See Alkasabi v. Rampart Acquisition Corp.*, 2011 WL 1232341, at *8 (S.D. Tex. Mar. 31, 2011); *Padron*, 2017 WL 8895641, at *5. Private settlement agreements have no bearing in a contempt proceeding. *See, e.g.*, *Ultimate Living Int'l v. Miracle Greens Supplements*, 2008 WL 11424147, at *2 (N.D. Tex. Apr. 22, 2008) (provisions in settlement agreement that do not appear in injunction are "inapplicable to the issue of contempt.").

Indeed, while injunctions and consent decrees are enforceable through contempt proceedings, private settlements are *only* enforceable through breach-of-contract lawsuits. *See Davis v. City of Jackson Fire Dep't*, 399 F. Supp. 2d 753, 755 (S.D. Miss. 2005) ("As the United States Court of Appeals for the Fifth Circuit has explained, a consent decree, unlike a settlement

6

agreement, is a judgment that can be enforced through contempt proceedings.") (citing *United States v. City of Miami, Fla.*, 664 F.2d 435, 439–40 (5th Cir. 1981)); *City of Miami*, 664 F.2d at 439 (en banc) (Rubin, J., concurring) ("If the parties agree to compose their differences by a settlement agreement, . . . the only penalty for failure to abide by the agreement is another suit."); *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378 (1994) ("Enforcement of the settlement agreement . . . is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction.").

The undersigned concludes the Magistrate Court may not enforce the parties' private settlement agreement because it was not incorporated into the Judgment, and therefore, it is not before the court. Only Radiant's Motion for Civil Contempt is before the court.

Even if the agreement and Reliant's unclean-hands defense were properly before the court, the undersigned is not persuaded that the unclean-hands defense is applicable. Unclean hands is an equitable remedy. *Egleston v. Egleston (In re Egleston)*, 448 F.3d 803, 808 (5th Cir. 2006). General distinctions between legal and equitable remedies are instructive to this inquiry. "[M]oney damages are, of course, the classic form of *legal* relief." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993)) (emphasis in original). In this case, the Radiant seeks monetary damages—a legal remedy.[2] Dkt. 59 ("Plaintiff is entitled to compensatory damages and attorneys' fees . . ."). Furthermore, where a claim is based upon a legal right, i.e., breach of contract, equitable doctrines are inapplicable. *Three H Enter. v. Advanced Env't Recycling Techs.*, 256 F. Supp. 2d 568, 590 (W.D. Tex. 2002) (Austin, Mag. J.) ("because [plaintiff's] claim is based purely upon a legal right, i.e. breach of contract, the [equitable] doctrine of laches is inapplicable"); *see Wayne v. A.V.A. Vending, Inc.*, 52

---

[2] "Equitable remedies, by contrast, are typically coercive, and are enforceable directly on the person or thing to which they are directed." *Int'l Fin. Servs. Corp. v. Chromas Techs. Can.*, 356 F.3d 731, 736 (7th Cir. 2004).

S.W.3d 412, 415 (Tex. App.—Corpus Christi 2001, pet. denied) (equitable doctrine of laches unavailable in breach of contract case); *and see U.S. Rest. Props. Operating L.P. v. Burger King Corp.*, No. 3:02-CV-0730-P, 2003 U.S. Dist. LEXIS 10179, at *17 (N.D. Tex. 2003) (rejecting application of equitable doctrine of laches in breach of contract action). Accordingly, unclean hands is inapplicable.

### C.    Damages

At the February 13, 2024, the undersigned ordered the parties to submit briefing in support of their competing damages models. The parties' models provide wildly different damages. Radiant's model suggests it is entitled to (at least) $775,720.28. Dkt. 91 at 4. Reliant's model supports an award of less than $25,000. Dkt. 93-2 at 11. The difference in the parties' figures results from Radiant's position that it is entitled to its lost gross profits and Reliant's position that disgorgement is appropriate. Dkt. 91 at 8; Dkt. 93-2 at 9.

"Civil contempt . . . can be used to compensate a party who has suffered unnecessary injuries or costs because of contemptuous conduct." *Travelhost*, 68 F.3d at 961–62 (5th Cir. 1996). The objective of civil intent is to remedy the consequences of defiant conduct, rather than punishing the defiance per se. *Goldman v. Trustcomm (In re Skyport Glob. Communs.)*, 661 F. App'x 835, 841 (5th Cir. 2016). "Civil . . . contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by  reason of noncompliance." *Ingalls v. Thompson (In re Bradley)*, 588 F.3d 254, 264–65 (5th Cir. 2009) (quoting *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949)).

Radiant argues that "when calculating damages from lost business opportunities, a party *may* use its gross-profit margin so long as those lost opportunities would not have increased its fixed costs." Dkt. 91 at 8 (emphasis added). Radiant quotes *Motion Medical Technologies v. ThermoTek* for the proposition that "gross profits is the appropriate method to calculate damages if 'there is

evidence that the victim was already profitable at the time damages began and could have performed profitable services using only its existing resources.'" *Id.* (quoting 875 F.3d 765, 780 (5th Cir. 2017)).

There is no dispute that Radiant was profitable during the relevant period. *See id.* Radiant's witness, Mr McDonald, testified that Radiant could have performed the additional jobs it contends it lost to Reliant. However, Radiant did not show by a preponderance that it could have performed the additional jobs it contends it lost because of Reliant's contemptuous actions. Furthermore, although Radiant is a platform company that shares expenses across locations (allowing for an economy of scale), McDonald testified that its damages model does not include all expenses. Tr. 160:15–19. And he testified that Radiant did not produce documentation that would support his calculations. Tr. 161:5–8 (Q: . . . "But you didn't produce your profit and loss sheets or financials to Reliant, so we can't confirm that, right?" A: "Yeah. We didn't produce them.").[3]

McDonald also testified as to Radiant's average ticket during the relevant period, but he did not produce any background information or data to support his figures. Tr. 155:10–25–156:1–8; Tr. 172:21 ("I didn't provide it, but I used it here."). McDonald also admitted that Radiant's model does not account for months during the relevant period when Reliant was not purchasing "Radiant" as a paid keyword. Tr. 157:2–5.

The case Radiant cites in support of its argument that the court should award gross profits provides that net profits are the appropriate award for lost profits. "[I]f a party aims to recover lost profits, it must show its net profits, not gross profits." *Motion Med. Techs.*, 875 F.3d at 779. Radiant's other case similarly provides: "lost income damages are measured in terms of net profits, not gross profits." *Work v. Commer. Underwriters Ins. Co.*, No. 01-60880, 2003 U.S. App. LEXIS

---

[3] The undersigned expressed skepticism at Radiant's position: "That wasn't my question. Do you think it's fair for your man to opine about figures . . . gross margins, and we basically just have—or the defense has to trust him?" Tr. 163:11–16.

27943, at *9 (5th Cir. 2003).[4] Accordingly, the undersigned concludes *net* profits are appropriate.

Radiant did not submit briefing or data as to its estimated net profits. Reliant submits that "using Radiant's most recently available historical net profit . . . is a better methodology to calculate Radiant's lost net profits," which Reliant calculates as $76,718.56. Dkt. 93-2 at 10 n.2. Reliant's calculation is based on Radiant's average net profit of 5.3% for the years 2014 to 2016. *Id.* But the 5.3% net profit is based on data prior to Radiant's acquisition by a private equity company and transition to a platform company. Tr. 170:3–16. Because Radiant's status as a platform company achieves some cost savings, the undersigned concludes that 5.3% is an inappropriate net profit figure.

Counsel for Reliant indicated that the "average net profit margin in the plumbing business is 10 to 20 percent." Tr. 159:25–160:1. The limitations of McDonald's model, including an average ticket amount based on three years' of data as opposed to the months in and around when Reliant utilized "Radiant" as a paid keyword as well as McDonald's bald assertion that Radiant could handle an influx of jobs, impact the average net profit percentage. The undersigned concludes that 15% is an appropriate net profit figure that balances the cost savings achieved by the platform company model with the limitations of McDonald's model.

Accordingly, the undersigned applies the industry average 15% net profit margin to the average ticket—$1,660—and the number of lost closed jobs—872. Thus, the undersigned will recommend that the District Court award $217,128 in lost net profits to Radiant.[5]

### D.    Attorney's fees

"Almost without exception it is within the discretion of the trial court to include, as an element of damages assessed against the defendant found guilty of civil contempt, the attorneys'

---

[4] An "unpublished opinion is persuasive authority . . . ." *Test Masters Educ. Servs. v. State Farm Lloyds*, 791 F.3d 561, 567 (5th Cir. 2015); *see* USCS Ct App 5th Cir, Loc R 47.5.4 ("opinions issued on or after January 1, 1996, are not precedent . . .").

[5] $1,600 x 872 jobs = $1,447,520 x 15% = **$217,128 net profit**.

fees incurred in the investigation and prosecution of the contempt proceedings." *Fund v. Highland Capital Mgmt. (In re Highland Capital Mgmt.)*, 98 F.4th 170, 176 (5th Cir. 2024) (quoting *In re Skyport Glob. Commc'ns*, 661 F. App'x 835, 841 (5th Cir. 2016)).

The undersigned concludes that an award of attorney's fees is appropriate. However, Radiant did not brief attorney's fees, nor did it present evidence of attorney's fees at the February 13, 2024 hearing. Radiant may submit a motion for attorney's fees that employs the lodestar method, accounts for the *Johnson* factors, and accurately reflects the work related to the prosecution of this Motion.

The undersigned agrees with Reliant's assessment that Radiant's Damages Brief (Dkt. 96-2) mischaracterizes the positions the parties took regarding discovery. Both sides sought discovery, *see, e.g.*, Dkt. 59 at 6 (Radiant seeks "discovery and additional briefing on the scope and amount of damages, as well as attorneys' fees"), thus the period during which Radiant incurred attorney's fees related to this Motion may not be as temporally broad as Radiant might wish.

## IV.    Conclusion

Radiant was entitled to rely on the bargain that was struck by the parties in the Settlement Agreement. Radiant was also entitled to rely on Reliant's good-faith representation that it would diligently honor that agreement by ensuring that it was complied with. That is not what happened.

Reliant was cavalier about honoring its commitment. And Reliant was negligent in adhering to the Settlement Agreement. The undersigned was particularly unmoved by Reliant's arguments that its noncompliance is mitigated by Mr. Hicks's dyslexia. If anything, Mr. Hicks, who purported to rarely write things down, had even more reason to ensure that the substance of a federal court judgment was communicated to his employees and that procedures were in place to ensure Reliant's strict compliance with the court's order.

It is clear—indeed, it is not disputed—that Reliant violated the Settlement Agreement. The challenge for the court is determining how to monetize the clicks on the paid keywords that directed

potential customers to Reliant's website in violation of the parties' agreement. Myriad factors impact the calculation, and both parties urge the court to adopt a damages model that maximizes or minimizes the amount due to Radiant. In the wake of the February 2024 hearing and even with the benefit of supplemental briefing, questions are left unresolved. For example, the undersigned was not convinced as to how the court is to know that a click on a paid keyword was plumbing related. Nor was the undersigned persuaded by Reliant's assertion that it would have made less profit on each service job.

The court is asked to exercise its equitable authority, *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019), to determine a just amount that compensates Radiant for Reliant's contemptuous conduct. *Travelhost*, 68 F.3d at 961–62. Radiant maintained an award of gross profits was appropriate, and Reliant argued for disgorgement. Reliant argued in the alternative for a net profit calculation, but its model relied on an outdated and outmoded net profit percentage. The undersigned concluded that net profits are the fairest measure of that amount. But the undersigned did not have the benefit of contemporaneous net profit data.

In the end, the undersigned employed a net profit percentage put forth by Reliant's counsel. Although imperfect, the undersigned believes the calculation—utilizing the information available to the court—fairly compensates Radiant without punishing Reliant, which the court may not do. *See Skyport*, 661 F. App'x at 842. The undersigned again acknowledges Reliant's urging of the court to offset an award to Radiant based on Radiant's alleged unclean hands; again though, Reliant alleges that Radiant violated a *separate* agreement. For such a violation, Reliant is not without a remedy, and it may sue Radiant for breaching that agreement.

## V.      Recommendation

For the foregoing reasons, the undersigned **RECOMMENDS** that the District Court **HOLD IN CONTEMPT** Defendant Reliant for violating the Judgment the District Court entered in 2019. The undersigned **FURTHER RECOMMENDS** the District Court **AWARD** Plaintiff Radiant compensatory damages in the amount of $217,128 as well as attorney's fees.

## <u>WARNING</u>

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections.  *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within 14 days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150–53 (1985); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc).

Singed May 30, 2024.

_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE

13